Good morning, Jeffrey Light on behalf of Plaintiff Ryan Noah Shapiro. I'd like to begin by discussing the responsiveness of the documents listed in the search chart that were actually deemed responsive by the FBI, by an analyst at the FBI, and then later in a conclusion. What was the context of that deeming? What was the context of? You say deemed responsive. Yeah, it was an entry responsive. Correct. And what stage had things gotten to at the point of that deeming? Well, they got as far as having listed which keywords were used and what files were responsive to that search. That is, we know that when a search was performed for the term mosaic study, certain file numbers came up in response to that. The FBI's declarant later says that notwithstanding that, those are not responsive. How did we – how did you get the search slip? We did a separate FOIA request for search slips, and that's how we got it. And I'm – so I was – maybe we'll ask the FBI. I was surprised that you got that. That seems to me to be the sort of pre-decisional materials that you might not get. But anyway, you have it. This may be an unusual case in the sense that plaintiffs don't typically have that kind of information. But we do have it here, and there's no dispute about its admissibility or authenticity. And so we have from the government only a conclusory statement by Mr. Hardy saying these documents that our analysts wrote down were responsive are not responsive without any explanation as to why this search slip chart was in error. And we have here – we don't need to simply rely on the word responsive in the search slip chart, because we also have the keywords that are used by the analysts. So we have the keyword. And your point here is you want some explanation from the FBI why a judgment was made at some point by someone that these are responsive or in one case potentially responsive, and then you get a conclusory statement later that they're not. And you want a further explanation. We want a further explanation. Now, if you didn't have the search slip, just hypothetically, if you didn't have the search slip, is their answer adequate? They've looked. Not responsive. A conclusory statement in an affidavit, at least one that states a legal conclusion, should not ever be. Well, how much are you expecting of them? I mean, all the time, don't we – aren't we satisfied with the agency saying, we've looked. It's not responsive. Well, when a requester doesn't challenge any aspect of it, then fine, the agency doesn't need to say that. That's what I'm getting at. So if you didn't have the search slip, what's your case look like then? If we didn't have the search slip as evidence, plaintiffs would still potentially be able to say, these are the specific file numbers that we're challenging. And they say, we've looked at it, and it's not responsive. And they get a presumption of good faith, right? So without the search slip, you have nothing. Isn't that right? Well, this case comes up to this court with the record as it is. And so, no, we're not asking the court to issue any broader of a ruling than what we have here, which is. . . It turns on the search slip. I mean, that's what I'm getting to, right? I mean, our position is that conclusory statements should not be entitled to wait, period. If there's a challenge to the responsiveness, then the government needs to adequately explain how it made a determination. For 10,000 documents? That's really a burden, isn't it? Well. . . If you go through every document and explain why that's not responsive. They wouldn't need to go through every single document. They would need to go through whichever particular ones are itemized as a challenge or just state in some fashion how that was, the determination was made. That is, the answer the government might give is, we determined that all of these files were non-responsive because you asked for something within a certain time frame, and these fell outside of the time frame. That would be an example. We're not asking that they go through 10,000 pages. It's an explanation of how they arrived at that decision. Simply saying, you asked for them, we said they're not responsive, does not fill the basic purpose of the declaration under Vaughan, which is to give plaintiffs enough information to put forth some sort of challenge. Here, it does seem that what happened is that the FBI's narrow interpretation of the FOIA-requested issue is what led to them making the non-responsiveness determination. Because if you look at the, there are a couple of FOIA-requested issues here, but one of them specifically asks for any and all mosaic studies. We have in the search slip file numbers that have mosaic study, that are responsive to the term mosaic study. It's hard to imagine any way that these could have been deemed non-responsive, other than the possibility that the FBI construed the request as being solely limited to the particular operation mosaic that was described in the background section, notwithstanding the literal language of the request for any and all operation mosaic. Let me ask you about that. I'm sorry, any and all mosaic studies. Let me ask you about that. So imagine that the FBI had an investigation, an undercover operation, I don't know, in Bolivia, called Operation Mosaic. It had nothing at all to do with kind of piecing together pieces of information with respect to FOIA or with respect to anything else. They just called it Operation Mosaic. Now, are you saying that you're entitled to that document? The way that the requests are written, yes. Okay. So what I don't understand is you made quite clear in your brief that you were seeking, I'm reading from the brief, seeking to learn more about the variety of issues relating to mosaic theory, operation mosaic, the use of mosaic theory, mosaic studies pertaining to contexts other than FOIA. These requests encompass both records pertaining to the operation mosaic described in the Webster article as well as any mosaic studies, whether or not they related to FBI's FOIA. They relate to the FBI's use of the mosaic concept more generally. The mosaic concept, which you described in extensive detail, is not about an undercover operation in Bolivia or any other country or in the United States. It's about a theory of how little pieces of information can be put together into bigger pieces. It seems quite reasonable for the FBI to use that context, which you described extensively, to explain what you meant by Operation Mosaic. Well, as a practical matter, in FOIA cases, requesters are not typically allowed to do a request, say, relating to a particular topic, because that can be anything that relates to anything else. So the way that – But in this case, you explained what you meant by mosaic theory and Operation Mosaic. You didn't ask – there's no way anybody could read your FOIA request reasonably as being to any operation that happened to use the word mosaic in it. In fact, in the two examples where they – the FBI actually says that, you've given up on those. You're not asking for those anymore. The one that involves a company that has the word mosaic in the title, for example, you don't want that. It's not that we don't want it. We're not challenging it. Well, why aren't you challenging it? That's my question. I mean, why aren't you – if that is really what you want, then why don't you insist on it? Well, we make decisions about what issues to present to the Mellon court. And you say arguably you could get that. That's the word you said. Yes. That's kind of a word to suggest you think if you tried that, the court would say that's not what you asked for. Are you saying you would – imagine that the FBI explained that these files that contain the word mosaic have nothing to do with the mosaic theory, with the mosaic method of putting together information, whether it's with respect to the FBI, with respect to FOIA or anything else. That's the reason why we think they're not responsive. That would still not be sufficient for you. Well, let me put it this way. Our position is that the literal scope of the request governs and that beyond that, whatever is described in the background is just evidence of heightened interest. Notwithstanding that, we are not pressing the full extent of that on the appeal. We have specifically focused in on certain issues because it's part of our – So I'm asking you, imagine we sent back the ones where they don't explain at all or where they – I think there are a couple of your examples where they do say it has to do with the name of a company and then other ones where they just say, as you point out, has something to do with intelligence and – I don't remember what the other one was, organized crime or something like that. Right. If we sent those back for an explanation and the explanation came back, those are the names of investigations. They're not – they have nothing to do with a particular theory of intelligence or of FOIA. Would you think that's not sufficient? That particular request is worded very specifically. It says – So you would require us to say that we reject your position, right? You need – in order to reject this, we need to rule that you're wrong as a matter of law. I'm just asking. I mean, if we were to send it back and say the question is, what is your reason for finding this responsive? And if the reason is that it's the name of an operation that has nothing to do with the context described, that would be sufficient. You're – and you're saying we must go further. The court must hold that you're wrong as a matter of law. Correct. Okay. And to explain this, if I could point to page JA-147, where the specific request says, any and all records responsive to a full-text search of the electronic case file for each of the below search terms, one of them is Operation Mosaic, that is literally what we have here, documents that are responsive to a full-text search of the electronic case file for the term, quote, Operation Mosaic. It's then followed by a two – several pages long description from 149 to 150 of the context, explaining what Operation Mosaic was, explaining what Operation Mosaic theory was, quoting from FBI Director Webster's description and explanation of what Operation Mosaic is. The question is, if you're a reasonable FBI FOIA responder, you don't think you should be influenced at all by the four pages of context that you provided? Well, I have two responses to that. First of all, that section is premised by the language, the following information is provided in order to enable the FBI to locate the requested records. It is not intended to limit the scope of my request. The purpose of that was to say, here is one Operation Mosaic that you are – that we're giving you some more information about. But second, the question is not what a reasonable FBI agent would determine from this. The question is whether a plaintiff's interpretation is reasonable. And it may be that our interpretation is quite a bit broader than another reasonable interpretation. But the FOIA requests need to be liberally construed. And here, the Court doesn't even need to go as far as really construing it at all, because the literal language of it matches exactly what the FBI did. The FBI would be hard-pressed to say that something – that a reasonable agent would read the literal language of this and determine that something other than the literal language governs because of something that was said several pages later with a specific indication that it is not intended to limit the scope. Well, but you say, even in your own – I don't want to beat this to death, but your brief at page 6 says, the broad language and these of other requests by Dr. Shapiro reflect his interest in the FBI's use of the Mosaic concept more generally. That's what you say. You don't say they reflect Dr. Shapiro's interest in every document that has the word Mosaic in it, in the FBI's files. Well, it's going to be up to plaintiff to determine if he receives those documents, which ones are of most interest to him or not of interest to him. He can file – yes, and he can file another FOIA request. But that's not the FOIA request he filed. That's the question. Well, I don't know what he – You can always refine your FOIA request after you get what you ask for. Well, I don't know what he would say to indicate he wants everything with the word Operation Mosaic. He could say, I want everything with the word Operation Mosaic, and I don't care whether it has anything to do with Mosaic theory or concept or anything else. Well, I mean, he wrote that in the request. He then – I mean, it's possible a FOIA requester could say, this is what I want, period, and then in order to protect his rights, decline to give the FBI additional information. The problem is that if you'd ask for every document with the word Mosaic in it, you would be rejected as being burdensome and would be asked to redefine your request, which is what you did. You properly, I think appropriately, limited the request to the things that the requester really wanted. Well, the requester – the request, as literally written, was not rejected on that basis. The FBI did exactly what – which was to do an ECF full-text search for, quote, Operation Mosaic. The FBI then said they're not responsive, notwithstanding the fact that we did the exact thing that you asked us to do, because they took a narrower reading than the FOIA request is susceptible to. So I understand, Your Honor's point that a reasonable FBI agent might interpret it that way. But the sole question before the Court is, is this request susceptible? I'm puzzled why you're spending so much time on this one rather than what seem like clear winners. Why don't you start with the one where you list six or eight files and they don't say anything about them at all? They don't say they're not responsive. They don't say they're destroyed. What? Doesn't that seem like the one to lead with? Well, if they're clear winners, it's not much for me to say beyond that. Well, I appreciate your belief that we have carefully read the briefs. Unfortunately, you're six minutes over. Did you say in your brief that the search that produced the search slips was electronic for the magic words? Yes. And Your Honor can see the search terms used on the search slip itself, which is JA-104. So the first one is Operation Mosaic, which resulted only in what they deemed analyst-removed. The ones that issue here are underneath that. Mosaic Study was the search term used. And then the file numbers are listed below that with the notation responsiveness, except for one that's listed as potentially responsive, and that's not one that we're challenging because it's listed only as potentially responsive. May I ask one more question? Yes. This has to do with the destroyed files. Yes. Which I also think is a better argument for you. But I wonder why you focus on the question of whether they were legally or illegally destroyed. So imagine, I know this is from Judge Webster forward, but imagine it was during the Hoover period. Okay. And Hoover just destroyed every file he didn't like. Okay. And today you're asking for documents which no longer exist because Hoover destroyed them illegally. I'm just, as a hypothetical. Would that make any difference to whether your FOIA request was appropriately responded to? Imagine they said they were illegally destroyed by J. Edgar Hoover. Why does it matter whether they were legally destroyed? Well, if they were illegally destroyed, then the government would have some obligation to attempt to reconstruct them. So obviously they couldn't give us documents that don't exist. But when the court has found that files were destroyed in bad faith, for example, after the litigation began. Totally get it. If they were destroyed after you asked for the FOIA request, of course it would matter. Yes. But if they were destroyed 20 years before, many of these began in the 70s, these files. Does the question of whether they're legally or illegally destroyed back then matter to the FOIA request? Well, I mean, first our position is they haven't established that they were destroyed at all. I understand. That seems a better position. But I'm pressing on what I thought was the weaker position. Understandably. I think it, I mean, this is the argument that they asserted, is that they were legally destroyed. And then they go on to talk about bad faith. So it was clearly placed an issue by the FBI. We were responding to it. Our position is that it matters because if they were illegally destroyed, it should trigger an obligation. I recognize that it is not the exact same scenario as when the reason that they're illegally destroyed is that it's illegal to destroy them after a FOIA request. But there may be many reasons that something's illegally destroyed. And they were illegally destroyed for that reason. That sort of triggers the same duty. I think the purpose of the requirement of looking to whether there's good faith or bad faith is to deal with the fact that once a file no longer exists, it simply can't be produced to the requester. If files are destroyed in bad faith, then, or illegally, then it should be incumbent upon the agency to do what it can to reconstruct it. So, for example, if Hoover decided that I'm going to destroy these files because one day somebody might file a FOIA request and they'll find out what the FBI was doing, that falls into the same category as destroying them after the FOIA request was received. If the purpose of the government is to hide its files, they shouldn't then be able to get a free pass and say, we illegally destroyed them, but that was a long time ago. So that absolves us of any obligation to even attempt to reconstruct them. What's your argument about the destroyed documents? What's inadequate about that explanation? Well, there is no explanation of the records retention schedule upon which they were based. So there's no way to determine whether they were, in fact, legally or illegally destroyed, number one. Number two, there's no explanation for a lot of them when they were destroyed. So they possibly could have been after a FOIA request was filed. In this case, we have no idea when they were destroyed. Additionally, there's not enough explanation to understand whether they were, in fact, destroyed. Basically, you want some detail beyond the conclusion because the conclusion is consistent with a vast range of things, including possibly that they've been mislocated and the renewed search might turn them up. That's correct. Okay. Thank you. Good morning, Your Honors, and may it please the Court, Brian Field on behalf of the Department of Justice. Let's start with what I regard as your weakest arguments. Of course. Therefore, their strongest. Sure. So what about the, I don't know, quite a number of documents for which there is no explanation at all, the ones where the file name was redacted? Certainly. So there's no explanation in the Second Hardy Declaration in the chart where the FBI sets forward file numbers that are non-responsive and those that are destroyed. But earlier in paragraph 13, the FBI states that all file numbers that are cited by plaintiff were destroyed or deemed non-responsive. Is there a file number for these, or these are the ones with redacted file numbers? There are file numbers underlying the redactions. The redactions are of the file numbers. I may be misconstruing Your Honor's question. Yeah, so the declaration lists a bunch of files and says these are, I think this is a J182, non-responsive, and then it lists another group, another eight, that are destroyed. Correct. But it doesn't list the additional ones in the request. That's right, Your Honor. It does not list them. Earlier in that same paragraph, the FBI states all, uses the word all files, were deemed either non-responsive or destroyed. The FBI then charts out the specific ones that were not redacted. So you're saying that general statement was intended to cover the redacted ones as well as the, as well as these others. Is that right? Yes, Your Honor. And is the redaction, is the reason for the redaction sufficient to justify leaving the requester uncertain as to whether this was destroyed or not responsive? Because that seems to be the outcome of the FBI's choice. Well, I would step back as an introductory matter with respect to the file numbers. The common practice, and this goes to a question I believe Judge Griffith asked, would be that they would have all been redacted. And that's the inadvertent release that's referenced in paragraph 26 of the Second Hardy Declaration. But the reason for the redaction actually weighs in here, and specifically with respect to the B6 redactions. So for each of the withheld file numbers, they were redacted because they dealt with third-party investigations or personnel matters. And it would stand to reason, the FBI submits, that something that is dealing with a third-party investigation or personnel matter is not going to be responsive to a question about the Operation Mosaic, as that term was used in the, used by then-Director Webster. But I do think that... I'm still lost on, I have to say, I did not read this declaration as saying what you're saying. I'm not saying it doesn't, wasn't intended. But I don't think anybody reading this would have understood that when they list 16 specific documents, they mean to and they don't list. So, but that's your representation, that that's the intention of the declarant. That is my understanding, yes, in preparation for argument, that that is what the FBI is intending by that statement. Well, the FBI don't need to do that under oath. They may need another declaration on that. Now, with respect to the, I'm not suggesting, the under oath part was an unnecessary addition. I understand. I mean, it may need to be a declaration. I understand. Now, with respect to the documents that came up with hits with the term Operation Mosaic, the FBI explains that two of them, one of them involved a human trafficking organization, or at least two of the hits involved a human trafficking organization, and the term Mosaic was in the business name. Right. That's your explanation of why it's not responsive. That's, yes, the FBI's explanation. Why is there no similar explanation? Then you go on. The other hits consisted of counterintelligence and organized crime information. It doesn't say something like it was the name of a company or it was the name of an undercover operation. It doesn't say anything other than that it consisted of counterintelligence and organized crime operation, which, as opposing counsel correctly says, that's what he's looking for. I would take issue, Your Honor, with that last statement. I don't know that I read Dr. Shapiro's requests or filings to be looking for information about counterintelligence matters, but I do think there's a difference here. Are you saying there's nothing, again, with respect to those, it doesn't have anything to do with a Mosaic concept or theory of piecing together information, either with respect to counterintelligence or with respect to organized crime? That's correct, because the preceding sentence says that the, and this is the Seidel Declaration, the preceding sentence says that the FBI determined that it does not have to do with the subject matter of Dr. Shapiro's request, and then goes on to add one more sentence explaining that to say it's because it is about counterintelligence matters or organized crime matters, and I read that, read those together to be stating it is about an operation Mosaic in a context that is entirely dissimilar from the way that that term was used in the Webster materials. No, it doesn't say that. I mean, you may read it that way, but it doesn't say that. All it says is the other hits consistent of counterintelligence and organized crime information. Certainly, Your Honor, and I do think that the two sentences read together, I respectfully would submit that that is a reasonable interpretation of those statements that when the declaration is read in the, under the good faith presumption that is afforded to it and that the only challenge to it is speculative. The problem is not the sentence before. It's the sentence before the sentence before, because the middle sentence specifically does explain that one of them involves a company. So I'm sort of waiting as I'm reading this to hear something about, and these have something to do with a company or to do with an operation, specific operation or something, but it doesn't say that. But that's what you understand it to mean. That is correct. It does not have that same parallel explanation. I think a reasonable reading of those two sentences together explains that we're talking about Operation Mosaic in a different context than the Webster article. If I might, I want to. Let me ask one more. Sure. With respect to the illegally destroyed documents or the legally destroyed documents. Yes. So in all of our other cases, as far as I could tell, where the government says they once had the document, they don't have it anymore, or maybe they had it, there's some explanation. That is, the declarant says I went to the office where it should be, and it's not in the files. Or I searched the records, and they're not in the files. This one just says it was destroyed. I take it the FBI must know, has some reason to know that it's destroyed. There must be a slip or an electronic record that says destroyed on this date. Is that right? To my knowledge, there is a, for lack of a better term, a log, a destruction log. A destruction log. A destruction log. And I can't speak to exactly how that, what shape that takes. Right. For what? Why isn't that detail included? We checked the destruction log, and it was destroyed. The log records that it was destroyed on such and such date, rather than just a, these were destroyed. The declaration says these were destroyed with a footnote pointing to the basis for the destruction. Well, yes. It just says it was carried out. I mean, record retention and disposal is carried out. It doesn't say this record. I mean, if there was a, if you have evidence that the, in this case it was actually carried out by the National Archives, that would be very useful and would end the matter. But all this says, this is like a general statement. The FBI always destroys things in accordance with the rules of the National Archives. I think that, I think it tethers it to the, not to get into sentences again, but it tethers it to the sentence that it's affixed to, which is we determined that these records were destroyed, and we, the FBI destroys records in the context, or in some cases sends records to NARA, in the context of record retention schedules. And there are no doubt cases in which agencies do, in fact, put forward additional information about the context of the destruction. And my friends cite Safeguard and Weisberg. But I do want to take at least just a brief moment to highlight the antecedent facts there that led to the need for that explanation. Here we have a statement that the records were destroyed and that they were, as I submit, destroyed pursuant to the NARA guidelines. That is entirely dissimilar from Safeguard or Weisberg, where we had questions up front about the nature of the destruction. And I think it is in those instances where you see more of this explanation offered, when something has been destroyed outside of the regular operations of business. In both Weisberg and Safeguard, you have destruction from cleaning. If it's done within the regular procedure, isn't it fairly easy to have some phrase, which using technology can be just repeated time and again, identifying what links it, the destruction, to that? Right? We know this from the record made of the destruction. Right? Yes, Your Honor. It would certainly be – I imagine it would certainly be possible to have included an additional sentence to say these records were destroyed and we know that because we looked at the log. I think a reasonable read of the declaration that was submitted is that that was determined. This was not Mr. Hardy simply saying in the abstract, we destroy records in accordance with the destruction schedules and we think these were destroyed. It doesn't have that think language that you saw in Weisberg. It doesn't have anything of that nature. And this Court has held that destruction of records or transfer of records pursuant to NARA's regulations is entirely sensible and that it doesn't raise a suspect motive that requires additional information. I'm concerned about the search slip. The search slip says there are a number of files that are responsive and then the affidavit from the Bureau is just a conclusory determination that they're nonresponsive. I'm going to read to you some language that we wrote in 1981. It is now well established that summary judgment on the basis of such agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail and are not controverted by either contrary evidence of record or evidence of agency bad faith. There's no evidence of bad faith here. But we do have a record here, right? We have a record that someone at the agency at some point in time looked at these files and said they're responsive. The next thing that we have is the agency saying they're not responsive and we don't have any explanation. Fill in the gap. Maybe it's too late to fill in the gap, but how does that happen? What are we supposed to do with those facts? I would direct the Court to other portions of the Second Party Declaration. My friend cites one portion to say that the statement where the FBI indicates these records, the search slip does not reflect the final determinations of the agency. It does not then note that there is additional information, as we explained in our briefs, explaining the entire search slip process as a general matter and also as a specific matter here. And Your Honor said in describing it that somebody within the FBI identified these records as responsive. But the Hardy Declaration, this is the Second Hardy Declaration at paragraph 26, rather the second paragraph 26 because there's two paragraphs 26, but it explains that search slip markings are to flag things for further investigation and review. And the FBI then goes forward and explains, well, what does that mean? That's research into the request, research into where documents might be. And when you read paragraph 26 with that initial statement, we submit that there is, in fact, no material dispute or genuine dispute of material fact between what is expressly an initial decision. I don't think it was in the opening brief, but at least counsel indicated here that to make it to the search slips, a document had to respond to the pinging search using the search terms. Is that so? That's correct. And the search slip that – Well, I mean, so those were, in the broad form, what Dr. Shapiro requested. Well, they were responsive to a CRS index search for the word mosaic study. Yes, and that's what he wanted, which he asked for. Well, I'd say two things. One is with respect to that and the questions that the Court was exploring with Mr. Light, that was about an ECF text search for a specific term, which is different than a CRS index search. I don't want to get overly in the weeds of FBI databases. But that is, in fact, dissimilar. They are two different things because something that is indexed to mosaic study means that somewhere in the file there's something about a mosaic study. It may not be the same mosaic study or the mosaic operation that's referenced in the Webster materials. Right, right. But that's – and that's precisely why the FBI explains in paragraph 26 all the inquiry that is done with respect to a record that is initially flagged. Okay. Let me just follow up. It's been suggested that if the FBI reviewed these documents, pinged positively, that would be burdensome. If it turned them over, that would be burdensome. Is there anything in the record that makes – supports that probability? That it would be burdensome? Right. Well, I think there's – the burdensome argument has come up – I think the burdensome argument came up with the FOIA request for all text search hits for the word mosaic. I think that came up. I think that was the context in which the burdensome discussion came up this morning. I'm just asking about now, regardless of what discussion there has been. But when you have the literal words of the Shapiro request, do we have something supporting the proposition that if those literal words were followed, either the search or the turning over or the assessment would be burdensome? No, it's not been – it hasn't been addressed as a question of burden in this case. It's been addressed as a function of non-responsiveness. I understand that, but the FBI's definition of non-responsiveness rests on Dr. Shapiro's expression of what he really cares about as opposed to what he actually formally requested. I can certainly see if he makes a broad request and maybe informally or whatever the FBI says, oh, my God, that will take us years and so forth. And he says, well, you know, what I really care about is this. Then you've had a shrinking of the request. Fine. But here we have an expression from Dr. Shapiro of, you know, his keen interest, but coupled with the broader request. And it's consistent, I think, with the desire to have the things that respond to the broader request so that, you know, we – I mean, they may shed some light. Rather dim light, perhaps, but a light. I would take issue with – so part of the conversation that was had with Mr. Light was about the nature of the FOIA request itself and what was sought there. And Your Honor was just saying that in this case there has not been narrowing, and I would respectfully disagree with that because the complaint itself affected narrowing. We had seven requests in this case that each had myriad subparts, and when the complaint was filed for each of them, Dr. Shapiro identified a particular portion that he was identifying for the purposes of litigation. It is then later in the path of litigation where a document, a search slip comes up, and he says, by the way, this document or the ECF text searches for the word Operation Mosaic, hey, that was also responsive to this other portion of the request. Are you saying there's language in the complaint that embraces, quote, a narrow version of the request? So for each request, the complaint identifies a portion or two that Dr. Shapiro is advancing a claim on. And, for instance, with respect to the Chief Judge's questions about the Operation Mosaic documents, Mr. Light suggests that that was covered by this December 2014 request at page, I think it's 147 of the Joint Appendix. But that's not, there are seven other subparts to that request, and in bringing the litigation, it was not identified that first prong of the FOIA request. And I don't want to, I'm not trying to be overly semantical about this, but this is particularly key when you're dealing with requests that are this broad. Another one in this case had 50-plus subparts. Where was the part that was identified? You just said. In paragraph for the Operation Mosaic, with the December 2014, that's at paragraph 27 of the complaint at JA-15? JA-15. And with respect to the Operation Mosaic text search, Dr. Shapiro does not identify that portion of the FOIA request. But rather reading it as Chief Judge Garland did with the background section, it reasonably explains to the FBI that we're talking about the Operation Mosaic identified in the Webster article. And it wasn't until. I'm sorry, where is it on JA-15? In paragraph 27 is the reference to the December 2014 FOIA request. Right. Which is found at Joint Appendix page 147. And you'll see that in this instance, Dr. Shapiro is referencing subparts F and G of this FOIA request, not that initial one that sought text search results. How do we tell that from looking at page 147? Well, I think from page 147 and 148, Dr. Shapiro has seven subparts of this request, one of which is all records constituting or referring to Operation Mosaic. And then the next one is about Mosaic studies. And in paragraph 27 of the complaint, just after the background section about Operation Mosaic, he only references records relating to Operation Mosaic and Mosaic study. And I would submit that with respect to the other background section offered there, and then when we get to summary judgment briefing, it is always discussed in the context of the Webster article's Operation Mosaic, that it wasn't until later in the litigation that we ever hear, the FBI hears for the first time, that Dr. Shapiro is also asserting that any literal response to the term Operation Mosaic is responsible. Is there any particular word on JA-15 that supports that reading? Well, I am pointing it to you. I mean, it escapes me that you point to paragraph 27. I have submitted a new FOIA request December 15th for records relating to Operation Mosaic and Mosaic study. That seems to match exactly the broad terms of the request, page 147. It, I think, read in context of the preceding paragraphs that provide all the background. This is the beginning of paragraph 13 of the complaint, background of Operation Mosaic. It set forth the course of this litigation on searches for documents. I see. You're talking about, say, paragraph 15. Yeah, yeah, I'm sorry, yeah, so 13 through that background section. I see, okay. That that set the course of litigation on a particular Operation Mosaic, and it is not until Dr. Shapiro's reply in support of summary judgment that we first see the suggestion that we're also, Dr. Shapiro's also asking about these other responses. I see. And I would just note, in that statement in the reply, the suggestion is made that he raised this also in the opening motion at page 13, in his opening motion for summary judgment at 13, which we would submit as incorrect. So I'm still a little bit confused. So my notes show there were 13 files identified as responsive on the search slip, but not listed by file number in the affidavit. And these were discussed under exemptions. Yes. So what's the explanation for why? And admittedly, this is not something that's in the briefs, and so I'm offering it here as we were preparing for oral argument, looking at the exemptions that I wanted to at least note for your honors. The argument there is the B6 redactions, B6-2, is a specific type of redaction for files that relate to third-party investigations or personnel matters. And that's explained in the second-party declaration. And I was simply noting that I would submit that it stands to reason that a file discussing a third-party investigation or personnel matter is highly unlikely to have materials about Operation Mosaic as that term was understood in the Webster article. Thank you. Are there any other questions? No. Thank you. Thank you, Your Honor. We would request that the Court affirm. Well, I'm trying to calculate how much time you have left. You have left. He went 14 over. You went 12 over. So you get two over. Thank you, Your Honor. It's a new standard. I just wanted to perhaps clarify a little bit why Dr. Shapiro would be interested in records that don't specifically match the things that he has expressed a heightened interest in. And that is because of concern that the FBI will make erroneous determinations about what is of interest to him and what is not. So going broader than that and asking for everything responsive to a keyword will allow Dr. Shapiro to evaluate for himself. I think, as is evident from this case, there are some problems with how the FBI makes determinations about what's responsive and what's not. Your Honor, I'd also suggested that perhaps if Dr. Shapiro had wanted the broader set, then he could submit a separate FOIA request that just said, I want these keywords, period, and not go into the background. If that were the law, Dr. Shapiro could certainly go forward and whenever he files a FOIA request have two of them, one of them that gives background and one of them that does not. That doesn't seem like it would advance any useful interests here, though. What do you say to your friend's argument that the complaint, the language on page 15, though in principle broad enough to reflect the broad request, is narrowed by the material on page 13, giving Dr. Shapiro's focus? The complaint is intended to describe in somewhat summary format what the actual documents are since they're fairly lengthy requests. The complaints are, of course, not determinative of what the actual document says, and this case comes up on summary judgment. I can tell that doesn't satisfy you. I'm sure I don't get it. The point was just that a complaint should not be understood to limit what is asked for. It could be, for example, a complaint limit. Well, it's what Dr. Shapiro is complaining about. Well, right. So, for example, a complaint might say we're interested in the adequacy of the search and not a fee waiver issue, but to expect that a complaint would need to mirror the precise language of the FOIA request in order to capture and preserve for litigation the full scope of it would just require unnecessarily prolix complaints. What is clearly intended here is that the documents, the requested issue, would be incorporated by reference. Okay. We'll take the matter under submission. Thank you. We'll take a brief recess while the new counsel come up and existing counsel step back. Thank you, Your Honor.
judges: Garland, Griffith, Williams